FREDDIE E. RICE, by his next friend, W. N. JONES, Appellant, v. J. B. BOLTON, ET AL.

**Pleadings:** FILING: DISCRETION. The subsequent approval of the filing of a pleading is as effective as though permission had been granted in advance; and the court's discretion in permitting the dilatory filing of pleadings will not be disturbed on appeal in the absence of its abuse.

**Appointment of guardian ad litem:** SALE OF INTESTATE LANDS: COLLATERAL ATTACK. An order of court appointing a guardian *ad litem* and directing the sale of a minor's property after service of notice but prior to the date specified therein, though irregular, is not subject to collateral attack where no application for its correction was made during the term and the record was subsequently approved.

**Sale of intestate's land:** DESCRIPTION: PRESUMPTION. In a suit to set aside the sale of an intestate's lands, the description of the same in the order of sale will be presumed to exemplify what was intended, in the absence of an averment to the contrary.

**Limitation of actions.** The statute of limitations will not run against an infant, except for a forfeiture or penalty, until one year after majority.

*Appeal from Mahaska District Court.*—HON. W. G. CLEMENTS, Judge.

WEDNESDAY, FEBRUARY 15, 1905.

MARY E. RICE died intestate January 18, 1890, seised of the east half southwest quarter section 17, township 77 north, of range 14, in Mahaska county. Her husband, David E. Rice, was appointed administrator of her estate, and on

January 30, 1890, filed a petition praying for an order to sell said land. Notice was served on Freddie E. Rice, the only child of the deceased, then seven years old, to appear on the 2d day of the next term of court, which convened February 18, 1890; but a guardian *ad litem* was appointed on the first day of the term, filed his answer on the same day, and the order of sale was likewise entered by the court on the first day of the term. This directed the sale of the south, instead of the east, half of the quarter section. On the 26th of May, 1890, the administrator conveyed the land to J. B. Bolton, a member of the firm of Bolton & McCoy, his attorneys, for $1,200, and the sale was subsequently approved. The proceeds of the sale were used in paying two mortgages on the land, amounting to $930, and other debts of the estate. On October 29, 1890, Bolton deeded the land to McSpadden, and October 2, 1894, the latter conveyed it to Anne E. Smith, who executed a mortgage thereon to John Nash. Mrs. Smith conveyed the premises to E. C. Lambert September 22, 1897, who, on April 1, 1902, executed a mortgage thereon to secure the payment of $900 to John Nash. Because of the irregularities noted, the plaintiff prayed that the sale and conveyance of the undivided two-thirds of the land inherited by him be set aside, and that the title thereto be established in him free of all liens or incumbrances. His petition was dismissed, and he appeals.— *Modified.*

*Carver & Wooster,* for appellant.

*McCoy & McCoy* and *L. C. Bolton,* for appellees.

LADD, J.— In an amendment to the petition the plaintiff alleged the execution of a mortgage on the land to Nash, and as against him asked full relief. Nash, by his attorney, filed a separate answer. But the notice of appeal was neither served on him nor his attorney. For this reason the motion to dismiss the appeal as to Nash is sustained.

II.   The defendants, other than the administrator and Nash, answered on the 6th day of August, 1900.   Afterward the files were lost, and the parties agreed that copies might be substituted.   The trial occurred on the 25th day of June, 1902, when the cause was submitted and taken under advisement, with an agreement that a decree might be entered in vacation.   On the 9th day of July, 1902, during the same term of court, said defendants, without leave, filed an " answer to meet proofs," setting up adverse possession.   On the 5th day of August following, and during the same term, the court entered an order that " the defendant is permitted to file amended answer."   On November 15, 1902, said defendants, without farther leave, filed a substituted answer.   The plaintiff moved that these pleadings be stricken for that they raised new issues, and were filed without permission, long after the cause had been submitted.   The motion was overruled on the 30th of January, 1902, the following entry being made:   " It appearing that the original answer of J. B. Bolton *et al.* was lost, and cannot be found, it is ordered that the entry filed November 15, 1902, together with the amendment filed July 9, 1902, shall be regarded as a substituted answer for the one lost."   The record contains nothing to indicate that any new issues were raised by the substituted answer, and whether leave to file was obtained is wholly immaterial, for the subsequent approval of the filing of a pleading is quite as effective as though permission had been granted in advance.   Dilatory tactics in making up issues cannot be approved, but such matters are in the control of the trial court, and, save upon a clear showing of abuse of discretion, this court will not interfere.

1. Pleadings: filing; discretion.

II.   Mary E. Rice died January 18, 1890, seised of the land in controversy, and leaving her surviving a husband, David E. Rice, who was appointed administrator of her estate, and one child, the plaintiff, then seven years old.   The land was incumbered by two mortgages, both of which were

due, to the amount of $930, and was worth from $1,200 to
$1,600.   The administrator applied immediately for an or-
der to sell, and in the notice thereof served on
plaintiff fixed " before noon of the second day of
February term, A. D. 1890, of said court, which
will commence on the 18th day of February,"
as the time in which to appear and defend.   Instead of wait-
ing until then, the guardian *ad litem* was appointed on the
first day of the term, immediately filed an answer, and the
order of sale was entered on the same day.   It is claimed that
these orders were without jurisdiction.   The necessity of de-
fense by a guardian *ad litem* is not questioned.   Section 3482
of the Code.   And undoubtedly the appointment may not be
made until " after the required service of the notice in the
action."   Section 3483, Code.   As the plaintiff was under
fourteen years of age, the appointment might have been on
the application of a friend or of the plaintiff in the action.
Section 3484, Code.   But the statute does not designate the
time when the guardian *ad litem* shall be appointed.   It
would seem that this should not be done until jurisdiction has
been acquired by completed service.   In no case called to our
attention, however, has an appointment before that time, the
record of which has been subsequently approved, been de-
clared illegal.   In *Allen v. Saylor*, 14 Iowa, 435, the service
was not such as to confer jurisdiction at any time, and on this
ground it was held that, " unless there is a complete service
upon the minor, the court has no jurisdiction to appoint a
guardian *ad litem.*"   In *Good v. Norley*, 28 Iowa, 188, there
was no service whatever.   In *Lyon v. Vanatta*, 35 Iowa,
521, the notice required the minor to appear at a time when
no term of court was held, and was adjudged no notice.   In
*Haws v. Clark*, 37 Iowa, 355, the time fixed for appearance
was not on a regular term day of the court, and was declared
no notice at all.   See, also *In re Hunter*, 84 Iowa, 388.   In
*Wickersham v. Timmons*, 49 Iowa, 267, an appointment of
a guardian *ad litem* after the trial had begun was approved.

VOL. 126 IA.—42

*2. APPOINTMENT OF GUARDIAN AD LITEM: sale of intestate's land; collateral attack.*

Had the child been of an age when the law allowed him to select a guardian, probably he might have selected one in advance. *McConnell v. Adams,* 3 Sandf. 729. But the appointment of a guardian *ad litem* is not jurisdictional. Had it been omitted entirely, this would have been an irregularity which would not have rendered the judgment void. *Drake v. Hanshaw,* 47 Iowa, 291; *Myers v. Davis,* 47 Iowa, 325; *Hoover v. Kinsey Plow Co.,* 55 Iowa, 668. And, as a general rule, the entry of judgment after service, but before the time allowed for appearance, is also regarded as an irregularity, to be corrected in a direct proceeding as by appeal, motion, or the like. 1 Black on Judgments, section 85; *White v. Crow,* 110 U. S. 183 (4 Sup. Ct. 71, 28 L. Ed. 113); *Mitchell v. Aten,* 37 Kan. 33 (14 Pac. Rep. 497, 1 Am. St. Rep. 231); *Whitewell v. Barbier,* 7 Cal. 54; *Town of Lyons v. Cooledge,* 89 Ill. 529; *Porter v. Partee,* 7 Humph. 169. The same rule is applicable to a judgment against an infant. It might have been corrected during the term by any person who chose to interest himself in the infant's behalf on the day or thereafter during the term he was required to appear by a friend, or possibly by an *amicus curiæ.* Nothing of the sort was done, and the record was subsequently approved. It cannot now be attacked collaterally. *Spurgin v. Bowers,* 82 Iowa, 187. Whether such an order might be set aside under section 4091 is not involved in this action.

IV. The order entered by the court directed the sale of the south half of the quarter section, whereas the deceased was owner of the east half, though the latter was described in the

3. SALE OF IN-
TESTATE'S
LAND: de-
scription;
presumption.

petition and the conveyance of the administrator and the subsequent deeds. No order whatever was entered for the sale of the northeast quarter of the southwest quarter of the section. Possibly the omission might have been made by mistake, but that issue is not before us, and, in the absence of any averment to the contrary, we must treat the record as a verity, and as exemplifying exactly what was intended.

V.  As this action was begun before plaintiff attained
his majority, the statute of limitations had not
4. LIMITATION   run against him.  See, sections 3447, 3453,
OF ACTIONS.     Code.

VI.  The plaintiff claims rents and profits on the land
since 1890, and, of course, is entitled thereto since the begin-
ning of this action.  As a farther accounting must be had in
any event, we have concluded to remand the cause to the dis-
trict court for the purpose of ascertaining the entire amount
to which plaintiff is entitled.  With the modification indi-
cated, the decree will be affirmed, and the cause remanded for
such accounting.